WILLIAM C. TRUAX ADS. PENNSYLVANIA RAILROAD
COMPANY.

In an *ex parte* affidavit made for the purpose of holding a defendant to bail, statements to which the affiant could not lawfully testify in open court are not competent evidence of fraud.

On contract.

The defendant is in custody under a *capias* issued at the suit of the plaintiff, in pursuance of an order made by a Supreme Court commissioner, adjudging that the defendant fraudulently contracted the debt for which the suit was brought, by unlawfully and willfully appropriating the moneys of the said company.

The defendant moves that he be discharged on common bail, for the reason that the affidavits laid before the commissioner do not support his adjudication.

Argued at November Term, 1893, before Justices DIXON and ABBETT.

For the motion, *John W. Wartman.*

*Contra, Martin P. Grey.*

PER CURIAM.   We think the adjudication in this case is without legal support.   An adjudication that a debtor has fraudulently contracted the debt must rest upon proof, by competent and legal evidence, of the facts from which fraud in contracting the debt may reasonably be inferred.   *Bowne* ads. *Titus*, 1 *Vroom* 340.   Statements made in an affidavit, to which the affiant could not lawfully testify in open court, are not competent proof in these *ex parte* proceedings for the purpose of holding a defendant to bail.

The affidavits in this case contain legal evidence that, prior to January, 1889, the defendant was the station agent of the plaintiff at Riverton, New Jersey, and that, in an interview with William M. Thomas, in January, 1889, he stated that there was a deficiency in his accounts with the company amounting to $688.78, and that he did not know how it happened, but would pay the said deficiency, and that in several subsequent interviews with Mr. Thomas (who was one of his bondsmen) he manifested great sorrow because of his position. This, we think, is the extent of the facts legally proved.

In his affidavit Mr. Thomas characterizes the admission of the defendant, above mentioned, as an admission of a " misappropriation " by the defendant of the company's money, but it does not appear that this term was used by the defendant, nor is it a fair characterization of what the defendant did admit.   His admission was simply of a deficiency in his accounts, caused he did not know how, for which he was very sorry and which he was bound to make good.   Such a deficiency could not arise from a " misappropriation " of the funds by the defendant, for the defendant would know how a deficiency so arising was caused.   Nor was the defendant's admission that he was very sorry for the deficiency and was bound to make it good, at all inconsistent with his being ignorant of the cause of the deficiency.

The other affidavit submitted to the commissioner was made by an accountant, who swore that he had examined the books, papers and accounts of the defendant and had found the deficiency of $688.78, and had also "there found that the defendant, while professing to have accounted to said company for all of the moneys paid to him as agent for said company, had suppressed and kept hidden the fact that he had received large amounts of money in excess of his payments to said company, and had appropriated the same to his own use and benefit."

If these statements were legal evidence, they would warrant the adjudication of the commissioner; but they are not; they are merely the witness' inferences from the legal evidence, which should itself have been produced before the commissioner.

From the facts shown before the commissioner by competent proof, we think it was not permissible for him to conclude that the defendant had been guilty of fraud, and therefore his order must be set aside, and the defendant must be discharged on common bail.